IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

SHERI C. WHITMAN, )
)
          Plaintiff, )
)
   -versus- ) Civil Action No.: 1:05CV01118
)
MICHAEL J. ASTRUE,[1] )
Commissioner of Social Security, )
)
         Defendant. )

## **RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE**

Plaintiff, Sheri C. Whitman, brought this action pursuant to Sections 205(g) and 1631(c)(3) of the Social Security Act, as amended (42 U.S.C. §§ 405(g) and 1383(c)(3)), to obtain judicial review of a final decision of the Commissioner of Social Security denying her claims for Disability Insurance Benefits and Supplemental Security Income under, respectively, Titles II and XVI of the Social Security Act (the "Act"). The parties have filed cross-motions for judgment, and the administrative record has been certified to the court for review.

---

[1] Michael J. Astrue was sworn in as Commissioner of Social Security on February 12, 2007. Pursuant to Rule 25(d)(1) of the Federal Rules of Civil Procedure, he should be substituted for Jo Anne Barnhart as the defendant in this suit. No further action need be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

**Procedural History**

Plaintiff filed applications for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI) on September 9, 2002, alleging a disability onset date of September 9, 2002. Tr. 68, 208. The applications were denied initially and upon reconsideration. Tr. 55, 56; 212, 218. Plaintiff requested a hearing de novo before an Administrative Law Judge (ALJ). Tr. 67. Present at the hearing, held on July 28, 2005, were Plaintiff and her attorney. See Tr. 30.

By decision dated August 12, 2005, the ALJ determined that Plaintiff was not disabled within the meaning of the Act. Tr. 15. On October 27, 2005, the Appeals Council denied Plaintiff's request for review of the ALJ's decision (Tr. 5), thereby making the ALJ's determination the Commissioner's final decision for purposes of judicial review.

In deciding that Plaintiff is not entitled to benefits, the ALJ made the following findings, which have been adopted by the Commissioner:

> 1. The claimant met the disability insured status requirements of the Act on September 9, 2002, the date the claimant stated she became unable to work, and continues to meet them through the date of this decision.
>
> 2. The claimant has not engaged in substantial gainful activity since the alleged disability onset date.
>
> 3. The medical evidence establishes that the claimant has "severe" rheumatoid arthritis and fibromyalgia, but does not have an impairment or combination of impairments listed in, or medically equal to one listed in, Appendix 1, Subpart P, Regulations No. 4. Additionally, for the reasons discussed in the body of this decision, the claimant has no other "severe" impairment.

4. For reasons explained in the body of this decision, the testimony regarding the severity of the claimant's impairments and resulting functional limitations was not persuasive[.]

5. The claimant retains the residual functional capacity to perform "medium" work.

6. The record supports a conclusion that the claimant's residual functional capacity is consistent with the performance of her past relevant work as a waitress and as a furniture finisher.

7. The claimant is able to perform her past relevant work as a waitress and a furniture finisher.

8. The claimant was not under a "disability" as defined in the Social Security Act, at any time through the date of this decision 20 CFR 404.1520(f).

Tr. 19-20.

**Analysis**

In her brief before the court, Plaintiff argues that the Commissioner's findings are in error because the ALJ erred in his assessment of her credibility. The Commissioner contends otherwise and urges that substantial evidence supports the determination that Plaintiff was not disabled.

Scope of Review

The Act provides that, for "eligible"[2] individuals, benefits shall be available to those who are "under a disability," defined in the Act as the inability:

> to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to

---

[2] Eligibility requirements for DIB are found at 42 U.S.C. § 423(a)(1), and for SSI at 42 U.S.C. § 1382(a).

3

result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months[.]

42 U.S.C. §§ 423(d)(1)(A) and 1382c(a)(3)(A).

To facilitate a uniform and efficient processing of disability claims, the Social Security Administration, by regulation, has reduced the statutory definition of "disability" to a series of five sequential questions. An examiner must determine whether the claimant (1) is engaged in substantial gainful activity, (2) has a severe impairment, (3) has an impairment which equals an illness contained in the Act's listing of impairments, (4) has an impairment which prevents past relevant work, and (5) has an impairment which prevents him from doing any other work. 20 C.F.R. §§ 404.1520 and 416.920.

The scope of judicial review by the federal courts in disability cases is narrowly tailored to determine whether the findings of the Commissioner are supported by substantial evidence and whether the correct law was applied. Richardson v. Perales, 402 U.S. 389 (1971); Johnson v. Barnhart, 434 F.3d 650, 653 (4th Cir. 2005). Consequently, the Act precludes a de novo review of the evidence and requires the court to uphold the Commissioner's decision as long as it is supported by substantial evidence. See Mastro v. Apfel, 270 F.3d 171, 176 (4th Cir. 2001) (citing Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996)). Substantial evidence is:

> "evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. If there is

4

Case 1:05-cv-01118-WLO-WWD   Document 13   Filed 07/03/07   Page 4 of 14

> evidence to justify a refusal to direct a verdict were the case before a jury, then there is 'substantial evidence.'"

Shively v. Heckler, 739 F.2d 987, 989 (4th Cir. 1984) (quoting Laws v. Celebrezze, 368 F.2d 640, 642 (4th Cir. 1966)).

Thus, it is the duty of this court to give careful scrutiny to the whole record to assure that there is a sound foundation for the Commissioner's findings, and that this conclusion is rational. Thomas v. Celebrezze, 331 F.2d 541, 543 (4th Cir. 1964). If there is substantial evidence to support the decision of the Commissioner, that decision must be affirmed. Blalock v. Richardson, 483 F.2d 773, 775 (4th Cir. 1972).

Pertinent Evidence Presented

As of the date of the ALJ's decision, Plaintiff was thirty-seven years of age. Tr. 16. The ALJ found that she has a "limited" education, id., and past relevant work as a waitress and a furniture finisher, Tr. 19. He determined that Plaintiff had not engaged in substantial gainful activity since the alleged onset of disability. The ALJ also decided that Plaintiff met the disability insured status requirements of the Act as of her alleged onset of disability, and that she continued to do so through the date of his decision. He further found the medical evidence to establish that Plaintiff suffered from the severe impairments of rheumatoid arthritis ("RA") and fibromyalgia. The ALJ concluded, nevertheless, that neither of these impairments met or equaled any of the Listing of Impairments.

5

Credibility

Plaintiff complains that the ALJ failed to follow the regulatory standard and the circuit precedent in evaluating her credibility. The court agrees.

As explained by Craig v. Chater, 76 F.3d 585 (4th Cir. 1996), 20 C.F.R. Sections 404.1529 and 416.929 provide that the determination of whether a person is disabled by pain or other symptoms is a two-step process: "First, there must be objective medical evidence showing 'the existence of a medical impairment(s) which results from anatomical, physiological, or psychological abnormalities and *which could reasonably be expected to produce the pain or other symptoms alleged.*'" Craig, 76 F.3d at 594 (quoting 20 C.F.R. §§ 404.1529(b) and 416.929(b)). The case clarifies,

> Therefore, for pain to be found to be disabling, there *must* be shown a medically determinable impairment which could reasonably be expected to cause not just pain, or some pain, or pain of some kind or severity, but *the pain the claimant alleges she suffers*. The regulation thus requires at the threshold a showing by objective evidence of the existence of a medical impairment "which could reasonably be expected to produce" the actual pain, in the amount and degree, alleged by the claimant.

Id. (citations omitted).

Craig further emphasizes that,

> It is only *after* a claimant has met her threshold obligation of showing by objective medical evidence a medical impairment reasonably likely to cause the pain claimed, that the intensity and persistence of the claimant's pain, and the extent to which it affects her ability to work, must be evaluated. See 20 C.F.R. §§ 416.929(c)(1) & 404.1529(c)(1).

6

Id. at 595. The Craig Court remanded after finding the ALJ failed to conduct step one of the pain analysis:

> In the instant case, the ALJ did not expressly consider the threshold question of whether Craig had demonstrated by objective medical evidence an impairment capable of causing the degree and type of pain she alleges. Instead, the ALJ proceeded directly to considering the credibility of her subjective allegations of pain. J.A. at 16. Accordingly, we remand to the ALJ to determine whether Craig has an objectively identifiable medical impairment that could reasonably cause the pain of which she complains. If the ALJ concludes that she does, then, and only then, should it undertake an assessment into the credibility of Craig's subjective claims of pain.

Id. at 596 (footnote omitted).

As Plaintiff alleges, the ALJ here failed to expressly find that she produced objective medical evidence of a medically determinable impairment which could reasonably be expected to produce the actual pain she alleged. He nevertheless went on to evaluate the intensity and persistence of Plaintiff's pain, and the extent to which it affects her ability to work, in contravention of Craig's directive.

The need for a step one finding is heightened in Plaintiff's case because, as found by the ALJ, she suffers from *two* severe impairments. As explained in Gavigan v. Barnhart, 261 F. Supp. 2d 334 (D. Md. 2003),

> Because the ALJ found that plaintiff has two impairments and the ALJ's analysis does not distinguish between them, the court is left to speculate as to the ALJ's conclusion regarding Step One. For example, the ALJ could have determined that plaintiff's back disorder, but not her fibromyalgia, could reasonably be expected to cause her pain or vice versa. He also could have found that both impairments could cause the pain. In any event, the court believes that remand is

7

necessary because the court cannot speculate as to the ALJ's reasoning.

Id. at 340 (citations omitted).

That one of Plaintiff's impairments is fibromyalgia is particularly relevant, as it is "a disease that poses particular challenges to credibility analyses due to the limited available objective medical evidence." Id. As described in Gavigan,

> "[The] cause or causes [of fibromyalgia] are unknown, there is no cure, and, of greatest importance to disability law, its symptoms are entirely subjective. There are no laboratory tests for the presence or severity of fibromyalgia. The principal symptoms are 'pain all over,' fatigue, disturbed sleep, stiffness, and – the only symptoms [sic] that discriminates between it and other diseases of a rheumatic character – multiple tenders spots, more precisely 18 fixed locations on the body (and the rule of thumb is that the patient must have at least 11 of them to be diagnosed as having fibromyalgia) that when pressed firmly cause the patient to flinch."

Id. at 340-41 (quoting Sarchet v. Chater, 78 F.3d 305, 306 (7th Cir. 1996)). Thus, it is quite possible that Plaintiff's fibromyalgia, rather than her RA, led to the type of pain of which she complained, and this impairment would not result in any of the objective findings which the ALJ found missing from the treating physician's records.[3] The court finds remand appropriate for the ALJ to properly address Craig's step-one assessment.

---

[3] Defendant's arguments in response, see Def.'s Br. at 5, focus on (i) "substantial evidence" to support the ALJ's credibility finding (citing, inter alia, Pittman v. Massanari, 141 F. Supp. 2d 601, 610 (W.D.N.C. 2001)), and (ii) an implied compliance, based on the ALJ's step-two analysis (citing King v. Barnhart, Civ. Action No.: 1:04CV1179, at 14 n. 6)). But following the reasoning of Gavigan, this court cannot determine if the ALJ's finding is supported by substantial evidence and "cannot speculate as to the ALJ's reasoning." 261 F. Supp. 2d at 339 n. 7.

Plaintiff next argues that the ALJ's credibility evaluation failed to consider the factors listed in Sections 404.1529(c) and 416.929(c). Social Security Ruling (SSR) 96-7p, 61 Fed. Reg. 34483, provides that, when the claimant's statements about her pain or other symptoms are not substantiated by objective medical evidence, "the adjudicator must make a finding on the credibility of the individual's statements based on a consideration of the entire case record," id. at 34485, specifically, the factors listed in the regulations:

> (i) Your daily activities;
> (ii) The location, duration, frequency, and intensity of your pain or other symptoms;
> (iii) Precipitating and aggravating factors;
> (iv) The type, dosage, effectiveness, and side effects of any medication you take or have taken to alleviate your pain or other symptoms;
> (v) Treatment, other than medication, you receive or have received for relief of your pain or other symptoms;
> (vi) Any measures you use or have used to relieve your pain or other symptoms (e.g., lying flat on your back, standing for 15 to 20 minutes every hour, sleeping on a board, etc.); and
> (vii) Other factors concerning your functional limitations and restrictions due to pain or other symptoms.

20 C.F.R. §§ 404.1529(c)(4) and 416.929(c)(4).

Plaintiff contends that the ALJ rejected her testimony because all of her allegations were not documented by her treating physician, Dr. Elliott Semble, and were not substantiated by objective medical evidence.[4] Yet the ALJ referred

---

[4] Plaintiff does not attempt to argue that the ALJ cannot rely on objective medical evidence in his credibility assessment. See, e.g., 20 C.F.R. §§ 404.1529(c)(4) and 416.929(c)(4) ("[W]e will evaluate your statements in relation to the objective medical (continued...)

specifically to Plaintiff's recitation of her daily activities, the different aspects of her pain, and the effectiveness of her medications. See Tr. 17, 18. These factors, however, lend support to Plaintiff's allegations.

The ALJ recounted Plaintiff's testimony that she could not read because her concentration was impaired; she could not stand long enough to wash dishes; and she spent the day sleeping or watching television. Tr. 18. Plaintiff also testified that she had pain even walking from her couch to her bed; she could only lift a gallon jug by using both hands and, even then, not repeatedly; she could not sleep on account of pain;[5] and she had to change positions constantly. Further, Plaintiff said her pain medication was ineffective.[6]

As to Plaintiff's other treatment, the ALJ noted that Plaintiff, despite her complaints of excruciating pain, never sought hospitalization, emergency room treatment, or urgent care. Id. There is no evidence that Plaintiff attempted any other pain relief measures, although Dr. Semble advised exercise. See Tr. 180. The ALJ also noted the complete absence, in the medical records, of any functional limitations. Tr. 18. Accordingly, the court finds that the ALJ adequately discussed

---

[4] (...continued)
evidence and other evidence, in reaching a conclusion as to whether you are disabled."); Craig, 76 F.3d at 595. Yet she is correct in her statement that the ALJ cannot rely *solely* on such evidence. Id. (citing 20 C.F.R. §§ 404.1529(c)(2) and 416.929(c)(2)).

[5] Dr. Semble prescribed Xanax to help Plaintiff "sleep[] at night." Tr. 144.

[6] This statement is supported by Dr. Semble's notes. See, e.g., Tr. 136, 140, 141, 144, 162, 169, 170, 173, 178.

10

the relevant factors. In addition, the ALJ relied upon his observations of Plaintiff during the hearing, as he is permitted to do. See SSR 96-7p, 61 Fed. Reg. at 34486.

Plaintiff claims that "there is no requirement that symptom allegations made by the claimant at hearing must be documented in the notes of treating medical sources." Pl.'s Br. at 6. But it is well-established that the factfinder can rely upon such information. The regulations provide that:

> [W]e will evaluate your statements in relation to the objective medical evidence and other evidence, in reaching a conclusion as to whether you are disabled. We will consider whether there are any inconsistencies in the evidence and the extent to which there are any conflicts between your statements and the rest of the evidence, including your medical history, the medical signs and laboratory findings, *and statements by your treating or examining physician or psychologist or other persons about how your symptoms affect you.*

20 C.F.R. §§ 404.1529(c)(4) and 416.929(c)(4) (emphasis added).

Ruling 96-7p provides that the credibility assessment will include statements and reports from treating physicians about the claimant's "medical history, treatment and response, . . . and other information concerning the individual's symptoms and how the symptoms affect the individual's ability to work." 61 Fed. Reg. at 34486. The Ruling adds that a strong indication of credibility is the consistency of the claimant's statements with other information in the case record, especially to the extent that they are consistent with medical signs, laboratory findings, and other information provided by medical sources. Id.

11

That said, the court cautions the ALJ, on remand, about the extent he relies on Dr. Semble's notes.  As noted by the ALJ, Tr. 18, Plaintiff saw Dr. Semble on a monthly basis from May 2002 through December 2004, stopping only when she became unable to pay him, see Tr. 182; see also Tr. 196.  But from October 2002 through October 2003, the doctor's notations were minimal and standardized, confined to a statement about Plaintiff's response to medication; her vital signs; the state of her hands or hands and feet; the distribution of her fibrosistic tender points; his diagnosis/es; and prescriptions.  See Tr. 140-45; 160-67.  On both February 14, and June 12, 2002, Dr. Semble noted that he had spent thirty minutes talking with Plaintiff about pain and arthritis, yet the corresponding records roughly follow this same pattern.  See Tr. 134, 136.  On September 4, 2002, he discussed treatment options for thirty minutes, yet included no details.  See Tr. 139.

Starting in November 2003, Dr. Semble began adding a sentence or two about Plaintiff's current complaints.  See Tr. 168-84.  He recounted Plaintiff's joint pain, swelling and stiffness, and muscle tenderness, but routinely noted the relative absence of objective findings.  See Tr. 168-84.  Towards the end of their regular visits, however, the doctor did note Plaintiff's fibromyalgia "flares" where she suffered from severe musculoskeletal pain with depression and severe fatigue.  See Tr. 177-83. Thus, although all of Plaintiff's complaints are *not* in her medical records, neither are they *inconsistent* with same.

12

Defendant argues that Plaintiff did make statements inconsistent with her medical records. Plaintiff, however, could reasonably have thought she had lupus, as Dr. Semble sent her to the emergency department for a lupus evaluation, at which time she complained of intermittent headaches, although not nausea or vomiting. Tr. 195-96. Thereafter, Dr. Semble diagnosed her with RA/lupus "overlap syndrome." Tr. 184. As to Plaintiff's lapse in treatment, during this period she was clearly experiencing "financial issues" which impacted her ability to seek regular care. See Tr. 182, 196. Cf. Gordon v. Schweiker, 725 F.2d 231, 237 (4th Cir. 1984) (inability to pay is a good reason for failing to seek treatment); SSR 96-7p, 61 Fed. Reg. at 34487.

Defendant also refers to Plaintiff's statements to a consultative physician about her physical abilities,[7] see Tr. 154-55, but the court notes that these were made almost three years prior to her hearing, and Plaintiff's state agency forms indicate a deterioration in her condition during that period. Compare Tr. 91 to Tr. 103. Nevertheless, the court refuses to make a "substantial evidence" determination as to the ALJ's credibility finding until such time as he has properly utilized the Craig analysis.

---

[7] Understandably, the opinions of state agency experts, based on such exam, would be consistent therewith. See Tr. 105, 117; 120, 126.

13

**Conclusion and Recommendation**

For the foregoing reasons, the decision of the Commissioner is not supported by substantial evidence and the correct legal principles were not applied. Therefore, IT IS RECOMMENDED that the Commissioner's decision finding no disability be REVERSED, and that the matter be REMANDED to the Commissioner under sentence four of 42 U.S.C. § 405(g). The Commissioner should be directed to remand the matter to the ALJ for proceedings consistent with this recommendation. To this extent, Plaintiff's motion for summary judgment (Pleading no. 9) seeking a reversal of the Commissioner's decision should be GRANTED. To the extent that Plaintiff's motion seeks an immediate award of benefits, it should be DENIED. Defendant's motion for judgment on the pleadings (Pleading no. 11) should be DENIED.

WALLACE W. DIXON
United States Magistrate Judge

July 3, 2007